In the Matter of the Arbitration between HARVEY R. WERT-
LIEB, Respondent, and GREYSTONE PARTNERSHIPS GROUP,
INC., Appellant.

First Department, May 2, 1991

APPEARANCES OF COUNSEL

*Berthold H. Hoeniger* of counsel *(Bailey, Marshall & Hoeniger,* attorneys), for appellant.

*Martin J. Jaron, Jr.,* of counsel *(Simoni & Laino,* and *Ginsburg, Feldman & Bress,* attorneys), for respondent.

## OPINION OF THE COURT

RUBIN, J.

Pursuant to a written contract dated May 9, 1987 entitled "Buyer-Finder Agreement", petitioner Harvey R. Wertlieb engaged the services of Care Facilities Sales Group, Inc., the predecessor of respondent Greystone Partnerships Group, Inc., to assist in petitioner's acquisition of the University Convalescent and Nursing Home, located in Wheaton, Maryland. The contract refers to services to be rendered "as to the availability for purchase, lease or management contract *[sic]* of the nursing home facility[ies]". It provides for a fee to be paid to respondent upon closing of the transaction and contains a broad arbitration provision for resolution of disputes by the American Arbitration Association in New York City. It is uncontroverted that petitioner ultimately acquired the subject nursing home together with one Marvin Rabovsky, taking title as Arcola Healthcare Associates, Inc. When petitioner refused to pay the fee specified in the contract, respondent demanded arbitration, and petitioner obtained the stay at issue on this appeal.

Petitioner's ground for resisting arbitration is that his acquisition of the nursing home represents the purchase of real property and, at the time of closing, George Naskaris, the principal of both respondent and its predecessor corporation, was not a licensed real estate broker in either New York or Maryland. Therefore, petitioner asserts, it would contravene public policy to permit the arbitration forum to be used to cover compensation which cannot be recovered in an action before the courts of this State (Real Property Law § 442-d).

Supreme Court granted a stay of arbitration, concluding that policy considerations would render any award in respon-

dent's favor unenforceable, whether viewed from the perspective of the law of this State or the law of Maryland. In reaching this conclusion, however, the court necessarily passed upon the merits of the controversy. This was error.

The subject of judicial intervention in arbitration proceedings was extensively discussed in this court's opinion in *Avon Prods. v Solow* (150 AD2d 236). It was noted that this State favors and encourages arbitration and that the Legislature has assigned a minimal role to the courts in the supervision of arbitration practice *(Avon Prods. v Solow, supra,* at 238). The instant matter requires, as in *Avon (supra,* at 239-240), the balancing of one public policy consideration (licensing) "against what this court has enunciated as 'the strong public policy of encouraging, by judicial noninterference, an unfettered, voluntary arbitration system, where equity should be done' *(Matter of Neirs-Folkes, Inc. [Drake Ins. Co.],* 75 AD2d 787, 788, *affd* 53 NY2d 1038)."

Normally, a party to a valid arbitration agreement is required to submit to arbitration and to defer any challenge to the proceeding until an award is rendered, either by way of an application to vacate the award (CPLR 7511; *see, Matter of Weinrott [Carp],* 32 NY2d 190, 198) or in opposition to an application to confirm the award (CPLR 7510; *Garrity v Lyle Stuart, Inc.,* 40 NY2d 354). It is rare for the courts to intervene in arbitration proceedings by amending the award *(see, Garrity v Lyle Stuart, Inc., supra,* at 358-359) and rarer still to preclude parties from seeking resolution of a dispute in their chosen forum by imposing a stay *(see, Matter of Silverman [Benmor Coats],* 61 NY2d 299, 309). Therefore, a stay of arbitration is reserved for disputes which involve "a public policy of the first magnitude" *(Matter of Aimcee Wholesale Corp. [Tomar Prods.],* 21 NY2d 621, 625 [enforcement of State antitrust policy]; *see also, Matter of Knickerbocker Agency [Holz],* 4 NY2d 245 [claim concerning liquidation of insolvent insurer]; *Durst v Abrash,* 22 AD2d 39, *affd* 17 NY2d 445 [enforcement of usurious loan agreement]; *but cf., Rosenblum v Steiner,* 43 NY2d 896). As stated more recently by the Court of Appeals, judicial intervention in the arbitration process is only appropriate where the relevant public policy considerations "prohibit, in an absolute sense, particular matters being decided or certain relief being granted by an arbitrator. Stated another way, the courts must be able to examine an arbitration agreement or an award on its face, without engaging in extended factfinding or legal analysis, and conclude that pub-

lic policy precludes its enforcement" *(Matter of Sprinzen [Nomberg],* 46 NY2d 623, 631).

It is impossible to arrive at the decision rendered by Supreme Court without having first resolved the factual question of whether or not the transaction in issue is predominantly a transfer of an interest in real property *(Dodge v Richmond,* 5 AD2d 593, 596). The answer to this question dictates ultimately the disposition of the merits of the controversy and trespasses upon the exclusive province of the arbitrator (CPLR 7501; *Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co.,* 37 NY2d 91, 95; *Schenkers Intl. Forwarders v Meyer,* 164 AD2d 541). It is hardly apparent from the demand for arbitration that the transaction falls within the ambit of Real Property Law § 442-d. To the contrary, it has long been recognized that this provision "does not apply to one who exercises the calling of selling or exchanging businesses as going concerns" *(Weingast v Rialto Pastry Shop,* 243 NY 113, 117). Moreover, because contravention of the statute is made a criminal offense (Real Property Law § 442-e), its application is strictly construed *(Galbreath-Ruffin Corp. v 40th & 3rd Corp.,* 19 NY2d 354, 364, *Weingast v Rialto Pastry Shop, supra,* at 117).

The record discloses that, together with the nursing home building and the surrounding land, the buyer received the furniture and equipment, licenses (including operating license), service contracts, employment agreements, patient list, medical records and good will. Given the degree of regulation of the nursing home industry and the particular qualifications required to operate a comprehensive care facility, the conclusion that the transaction is merely or predominantly an exchange of an interest in real property within the purview of the statute is by no means unassailable. Therefore, this matter is clearly distinguishable from the situation presented in *Durst v Abrash (supra),* in which arbitration was employed as a device to insulate an illegal transaction from judicial review and to avoid the prohibition against the collection of usurious interest *(Rosenblum v Steiner, supra,* at 898; *see also, Matter of Schwartz [American Swim Pools],* 74 AD2d 638).

Respondent is not attempting to enforce an agreement which is patently illegal *(see, Mendelsohn v A & D Catering Corp.,* 100 AD2d 209, 215-216). Moreover, it has been observed that the purpose of Real Property Law § 442-d is "the protection of the public" and that its utilization as a device to enable the unscrupulous to avoid payment of legitimate obligations should not be permitted *(Galbreath-Ruffin Corp. v 40th*

*& 3rd Corp., supra,* at 362). Petitioner has apparently received the full benefit for which he bargained, as reflected by the contract between the parties. Before respondent's contractual right to seek resolution of this dispute in the designated forum will be abrogated by the courts, petitioner must demonstrate that the agreement furthered some clearly illegal enterprise. In the absence of such a showing, the extraordinary relief which he requests is unwarranted, and the arbitration provision will be enforced.

Accordingly, the order, denominated order and judgment, of the Supreme Court, New York County (Carol E. Huff, J.), entered September 12, 1990, which granted the petition to permanently stay arbitration (CPLR 7503 [b]), should be reversed, on the law, the application denied, with costs, and the parties directed to proceed to arbitration.

MURPHY, P. J., MILONAS, ELLERIN and Ross, JJ., concur.

Order, denominated an order and judgment (one paper), Supreme Court, New York County, entered on September 12, 1990, reversed, on the law, the application denied, with costs, and the parties directed to proceed to arbitration.