[699 NYS2d 355]

In the Matter of CITY OF NEW YORK et al., Respondents, v UNIFORMED FIRE OFFICERS ASSOCIATION, LOCAL 854, IAFF, AFL-CIO, et al., Appellants.

First Department, December 7, 1999

4

### APPEARANCES OF COUNSEL

*Cheryl Payer* of counsel, New York City (*Ellen B. Fishman, Felicia A. Mennin* and *Chlarens Orsland* on the brief; *Michael D. Hess, Corporation Counsel* of New York City, attorney), for respondents.

*Richard M. Betheil* of counsel, New York City (*Tina C. Kremenezky* on the brief; *Pryor Cashman Sherman & Flynn, L. L. P.,* attorneys), for Uniformed Fire Officers Association, Local 854, IAFF, AFL-CIO and another, appellants.

*Victoria A. Donoghue* of counsel, New York City (*Wendy E. Patitucci* on the brief; and as *General Counsel, Office of Collective Bargaining,* attorney), for Steven C. DeCosta and another, appellants.

*Claude I. Hersh* of counsel (*James R. Sandner*, attorney), for Municipal Labor Committee, *amicus curiae.*

### OPINION OF THE COURT

RUBIN, J.

This proceeding arose out of criminal investigations conducted by the New York City Department of Investigation (DOI) that either implicated the conduct of New York City Fire Department personnel or required their testimony as witnesses to possible criminal activity. One such investigation concerned an attempt to obtain higher pension benefits by claiming that a disabling injury was sustained while on duty. The scheme allegedly involved one firefighter calling in a false alarm to afford the injured firefighter the opportunity to claim that the injury was sustained in responding to the alarm. The investigation included interviews with members of respondent union, Uniformed Fire Officers Association, Local 854, who appeared pursuant to subpoena.

The union brought a grievance and demanded arbitration, contending that interviews with its members were conducted in violation of the employee rights provisions of its collective bargaining agreement with the City, article XVII of which provides, in relevant part:

"Section 2.

"At the time an employee is notified to appear for interrogation, interview, trial or hearing the Employer shall advise the employee either in writing, when practicable, or orally to be later confirmed in writing of (1) the specific subject matter of such interrogation * * * and (2) whether that employee is a suspect or non-suspect. If notified orally, the employee shall be given a written notice before the interrogation * * * If an interrogation or interview may lead to disciplinary action, the employee may be accompanied by counsel and/or a union representative at such interrogation or interview. * * *

"Section 5.

"When an employee is a suspect in a departmental investigation or trial, the officer in charge of the investigation or trial shall give the employee the following warning before that employee is questioned:

" 'I wish to advise you that you have all the rights and privileges guaranteed by the law of the State of New York and the Constitutions of this State and of the United States, including the right not to be compelled to incriminate yourself. You have the right to have an attorney present if you wish. I wish further to advise you that if you refuse to answer any questions relating to the performance of your duties, you will be subject to dismissal from your employment with the City. However, if you do answer questions, neither your answers nor any information or evidence which is gained by reason of such answers can be used against you in any criminal proceeding. You are advised, however, that if you knowingly make any false answers or deceptive statements, you may be subject to criminal prosecution and disciplinary action by reason thereof.'

"Such employee shall also be advised of the right to union representation. When the interrogating officer is advised by the employee that that employee desires the aid of counsel and/or a union representative, the interrogation shall be suspended and the employee shall be granted a reasonable time to obtain counsel and/or a union representative, which time shall be at least two working days.

"If it appears that the investigation may result in a disciplinary proceeding based on the Employee's answer to questions or on the refusal to answer, a stenographic or electronic record of the questioning of the employee shall be made unless the exigencies of the situation prevent such recording.

"In the event that an employee is subject to charges by the Department, any such record shall be made available to the employee or the representative."

The agreement also states that an "employee shall not be questioned by the Employer on personal behavior while off duty and out of uniform," except in matters pertaining to official department business, extradepartmental employment or volunteer firefighting, conflict of interest, injuries or illness, residency, and loss or improper use of departmental property.

The union claimed in its arbitration demand that the DOI, as an agency of the "employer," the City of New York, was bound by the terms of the collective bargaining agreement. The union complains that its members interviewed by DOI investigators were not given prior written notice, were not read the statement of rights contained in section 5, were not permitted union representation (though counsel was permitted), and were not given immunity from the use of any information obtained in subsequent criminal proceedings. The City contested the arbitrability of the dispute before respondent Board of Collective Bargaining. On October 28, 1997, the Board issued a determination (Decision No. B-46-97), finding the dispute to be arbitrable.

The City then brought this special proceeding pursuant to CPLR articles 75 and 78 in Supreme Court, seeking to annul the Board's determination and to permanently enjoin arbitration of the dispute. The petition contends that the City of New York never agreed to arbitrate the procedures employed by the DOI in conducting criminal investigations; that the collective bargaining agreement cannot, as a matter of public policy, supplant or impair those procedures; and that public policy considerations prohibit negotiation of the DOI's criminal investigation procedures.

Supreme Court set aside the administrative determination and enjoined arbitration, holding that "the core function of ensuring governmental integrity is a public policy sufficiently strong as to preclude referral of this dispute to arbitration." The court further found the policy implications to warrant immediate intervention to permanently stay arbitration (CPLR 7503 [b]) rather than deference to the arbitral forum and limitation of judicial review to the propriety of the forthcoming award (CPLR 7511; see, Avon Prods. v Solow, 150 AD2d 236, 238-239).

On appeal, respondents contend that Supreme Court acted precipitously in staying arbitration because an arbitration

award might determine the dispute in a manner that accords with public policy. They argue that the determination by the Board of Collective Bargaining that the dispute is arbitrable is both reasonable and entitled to deference. Finally, they assert that the governing statutes do not bar arbitration of the dispute and that public policy considerations do not militate overwhelmingly against its resolution in an arbitral forum.

In *Matter of Wertlieb (Greystone Partnerships Group)* (165 AD2d 644, 646-647), this Court stated the considerations bearing upon judicial interference in the arbitration process: "Normally, a party to a valid arbitration agreement is required to submit to arbitration and to defer any challenge to the proceeding until an award is rendered, either by way of an application to vacate the award (CPLR 7511; *see, Matter of Weinrott [Carp]*, 32 NY2d 190, 198) or in opposition to an application to confirm the award (CPLR 7510; *Garrity v Lyle Stuart, Inc.*, 40 NY2d 354). It is rare for the courts to intervene in arbitration proceedings by amending the award (*see, Garrity v Lyle Stuart, Inc., supra*, at 358-359) and rarer still to preclude parties from seeking resolution of a dispute in their chosen forum by imposing a stay (*see, Matter of Silverman [Benmor Coats]*, 61 NY2d 299, 309). Therefore, a stay of arbitration is reserved for disputes which involve 'a public policy of the first magnitude' (*Matter of Aimcee Wholesale Corp. [Tomar Prods.]*, 21 NY2d 621, 625 [enforcement of State antitrust policy]; *see also, Matter of Knickerbocker Agency [Holz]*, 4 NY2d 245 [claim concerning liquidation of insolvent insurer]; *Durst v Abrash*, 22 AD2d 39, *affd* 17 NY2d 445 [enforcement of usurious loan agreement]; *but cf., Rosenblum v Steiner*, 43 NY2d 896). As stated more recently by the Court of Appeals, judicial intervention in the arbitration process is only appropriate where the relevant public policy considerations 'prohibit, in an absolute sense, particular matters being decided or certain relief being granted by an arbitrator. Stated another way, the courts must be able to examine an arbitration agreement or an award on its face, without engaging in extended factfinding or legal analysis, and conclude that public policy precludes its enforcement' (*Matter of Sprinzen [Nomberg]*, 46 NY2d 623, 631)." Where a statute, decisional law or public policy considerations preclude arbitration, the question of whether the dispute is within the scope of the arbitration provision is not reached (CPLR 7503[a]; *Matter of Blackburne [Governor's Off. of Empl. Relations]*, 87 NY2d 660, 665).

The New York City Charter confers broad investigatory powers on the Department of Investigation to carry out its mandate

to investigate "the affairs, functions, accounts, methods, personnel or efficiency of any agency" (NY City Charter § 803 [b]). Section 803 (d) of chapter 34 provides, "The jurisdiction of the commissioner shall extend to any agency, officer, or employee of the city, or any person or entity doing business with the city, or any person or entity who is paid or receives money from or through the city or any agency of the city." Section 805 (a) of chapter 34 provides, "For the purpose of ascertaining facts in connection with any study or investigation authorized by this chapter, the commissioner and each deputy shall have full power to compel the attendance of witnesses, to administer oaths and to examine such persons as he may deem necessary." Section 1128 (a) of chapter 49 provides, "No person [shall pre]vent, seek to prevent, interfere with, obstruct, or otherwise hinder any study or investigation being conducted pursuant to the charter" (see, Matter of Dairymen's League Co-op. Assn. v Murtagh, 274 App Div 591, affd 299 NY 634).

The powers of the Commissioner of the DOI were inherited from his predecessor, the Commissioner of Accounts. As the Court of Appeals stated over a half-century ago, "We have held that the Commissioner's power to inquire is not limited to witnesses in the service of the city, and that there is no privilege of silence when reticence, if tolerated, would thwart the public good" (Matter of Edge Ho Holding Corp., 256 NY 374, 380, citing Matter of Hirshfield v Hanley, 228 NY 346). The need for maintaining an honest civil service is widely recognized as a compelling State interest (Barry v City of New York, 712 F2d 1554, 1560) and, to this end, State employees may be held to account in "proper proceedings, which do not involve an attempt to coerce them to relinquish their constitutional rights" (Uniformed Sanitation Men Assn. v Commissioner of Sanitation of City of N. Y., 392 US 280, 285; see also, Lefkowitz v Cunningham, 431 US 801, 805-806). As the Court of Appeals explained in Matter of Matt v Larocca (71 NY2d 154, 160, cert denied 486 US 1007), "Public employees, charged with a public trust, do not have an absolute right to refuse to account for their official actions and at the same time retain their employment." However, the Court noted (at 159) that "when a public employee is compelled to answer questions or face removal upon refusing to do so, the responses are cloaked with immunity automatically, and neither the compelled statements nor their fruits may thereafter be used against the employee in a subsequent criminal prosecution" (citing Lefkowitz v Turley, 414 US 70, 78-79; Gardner v Broderick, 392 US 273, 276-277;

*Garrity v New Jersey*, 385 US 493, 500; *People v Avant*, 33 NY2d 265, 271).

Public policy, as reflected in the New York City Charter and in decisional law, prohibits "in an absolute sense" (*Matter of Sprinzen [Nomberg]*, 46 NY2d, *supra*, at 631) any interference with the authority of the Department to require a public employee to answer questions regarding activities that bear upon the performance of official actions. Thus, the extent to which provisions of the collective bargaining agreement apply to interviews conducted by the DOI is not one that may be submitted to arbitration.

The fallacy of the union's position is its characterization of the City of New York as the "employer" under the bargaining agreement rather than the New York City Fire Department. In reality, while the Fire Department may bargain away certain of its own management prerogatives in reaching a labor accord with the Uniformed Fire Officers Association, it has no power to defeat or impair rights conferred upon another City agency by statute. As respondents concede, the employee rights provision of its labor contract should not be read to restrict investigations into the activities of union members that are conducted by the New York City Police Department, itself a City agency. Logically, neither should those provisions be permitted to restrict similar police powers exercised by the DOI, another City agency.

Restrictions may be judicially imposed even upon the waiver of an agency's own prerogatives. In *Board of Educ. v Areman* (41 NY2d 527), the Court of Appeals held that, as a matter of statutory duty and public policy, the Board of Education could not bargain away the right to inspect teacher personnel files. The Court concluded (at 532), "Having ultimate, ongoing and fixed responsibility for employing qualified teachers, the board must have access to its teacher[s'] personnel files." Similarly in *Matter of City of New York v MacDonald* (201 AD2d 258, *lv denied* 83 NY2d 759), this Court held that the statutory discretion of the Police Commissioner to discipline police officers (Civil Service Law § 76 [4]) would be impermissibly compromised by a contract provision imposing "arbitral disciplinary procedures for tenured officers" which, in effect, "would repeal or modify this discretion to determine and impose discipline in violation of Civil Service Law § 76 (4)." (*Supra*, at 258, 259.)

In the matter at bar, the Department of Investigation is charged with broad duties to investigate "the affairs, functions, accounts, methods, personnel or efficiency of any agency" (NY

City Charter, ch 34, § 803 [b]). The concomitant discretion conferred upon the Department to carry out its mandate would likewise be impermissibly compromised by the restrictions imposed upon its examination of witnesses by the collective bargaining agreement between respondent Uniformed Fire Officers Association and the New York City Fire Department. Because the prerogative of the Department to employ such investigative procedures as it deems appropriate may not be bargained away, there is no reason to submit to arbitration the question of whether the employee rights provisions of the union's collective bargaining agreement are binding upon the DOI.

Accordingly, the order of the Supreme Court, New York County (Harold Tompkins, J.), entered May 29, 1998, which granted the petition of the City of New York, the Department of Investigation of the City of New York, and the Commissioner of the Department of Investigation to annul a determination of respondent Board of Collective Bargaining of the City of New York directing that respondent union and the City arbitrate their dispute over whether their collective bargaining agreement governs the Department's investigatory procedures, should be affirmed, without costs.

SULLIVAN, J. P., NARDELLI and WILLIAMS, JJ., concur.

Order, Supreme Court, New York County, entered May 29, 1998, affirmed, without costs.