OPINION OF THE COURT
Tom, J.
Petitioners contend that a change in the method of random drug testing utilized by the New York City Police Department (NYPD) for the screening of police officers—from urinalysis to hair analysis—is exempt from collective bargaining because it involves the disciplinary authority of the Police Commissioner, as conferred by New York City Charter § 434 and Administrative Code of the City of New York § 14-115. Under the plain language of the Administrative Code provision, the Commissioner’s investigatory authority arises only after written charges have been preferred and reasonable notice of the alleged infraction has been given. Thus, we conclude that no persuasive policy reason has been advanced to require the New York City Office of Collective Bargaining to depart from its prior decisions, which have consistently found that routine drug screening procedures are a mandatory subject of collective bargaining.
On August 1, 2005, NYPD abandoned the use of urinalysis as its preferred method of random drug screening of its members and substituted a type of hair follicle testing known as radioimmunoassay of hair (RIAH). The absence of any consultation with the unions representing NYPD members prior to the adoption of RIAH analysis resulted in the filing of an improper practice petition with the New York City Office of Collective *72 Bargaining (OCB) by the Detectives Endowment Association on behalf of itself, the Patrolmen’s Benevolent Association and the Sergeants’ Benevolent Association (the unions).[1] The petition alleged that by unilaterally changing the drug testing method, NYPD violated New York City Collective Bargaining Law (Administrative Code) § 12-306 (a) (4).
NYPD’s answer to the improper practice petition is not included in the record. However, the answer submitted by the Mayor’s Office of Labor Relations to OCB asserted that RIAH testing had been authorized by Patrol Guide Procedure (PGP) No. 205-30, effective January 1, 2000, which made the technique available in connection with the medical examination of probationary police officers who have completed the period of probation, the investigation of officers who are suspected of illegal drug use on the basis of reliable information, and the voluntary screening of officers subject to unsubstantiated allegations of illegal drug use who request permission to be tested.
The dispute was submitted to OCB’s Board of Collective Bargaining for adjudication. In the course of the proceedings, the Board requested that the parties address the implications of the Court of Appeals’ decision in Matter of Patrolmen’s Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd. (6 NY3d 563 [2006], affg 13 AD3d 879 [2004]), decided while hearings were ongoing. NYPD took the position that “[t]esting procedures . . . and disciplinary consequences are inextricably intertwined, at least in this situation, with the Police Commissioner’s disciplinary authority pursuant to City Charter § 434 and Administrative Code § 14-114 [sic].”
OCB granted the unions’ petition. It found that NYPD violated New York City Collective Bargaining Law (Administrative Code) § 12-306 (a) (4) “by unilaterally changing drug testing procedures, a mandatory subject of bargaining” (see http:// search.citylaw.org/isysquery/3c9f597b-7bll-4505-ab269a57963e39b6/2/doc, cached at http://www.nycourts.gov/ reporter/webdocs/center_for_nyc_law_cityadmin.htm). Relying on Matter of Nassau County Police Benevolent Assn. (County of Nassau) (27 PERB ¶ 3054 [1994]) and its own prior decisions, OCB noted that these rulings “recognized a distinction between the decision to test [which is not subject to collective bargaining] and the procedures used to implement that decision [which *73 are subject to collective bargaining].” (Id.) OCB found that “even if NYPD’s procedures for hair testing are the same as applied to a subset of employees already subject to such testing, the expansion of the categories of employees to whom the procedures now are applied constitutes a unilateral change in drug screening procedures.” (Id.) The decision concluded, “The procedural matters raised by the Unions . . . are not implicit parts of the disciplinary process . . . [T]he procedures for drug testing are utilized before any basis for discipline is determined by the Commissioner to exist.” (Id.)
The instant CPLR article 78 proceeding to annul the OCB determination as arbitrary and capricious (CPLR 7803 [3]) was commenced by the City of New York, NYPD, the New York City Mayor’s Office of Labor Relations and their respective commissioners. Relying on Patrolmen’s Benevolent Assn. (6 NY3d at 574), petitioners first argued that public policy vests disciplinary authority over the New York City police force in the Commissioner, and that investigatory procedures employed by the Commissioner, such as interviewing police officers, are not subject to collective bargaining. Because the drug testing procedures at issue are intended “to uncover and deter illegal drug use by members of the NYPD,” petitioners concluded, RIAH testing is investigatory in nature, and because it is “ ‘ancillary’ or ‘tangentially’ related to” discipline, it is “prohibited from being included in . . . collective bargaining” (quoting Patrolmen’s Benevolent Assn., 13 AD3d at 881).
As their second ground for annulment, petitioners advanced the same argument made by the Mayor’s Office of Labor Relations in the proceedings before OCB—that NYPD’s use of hair analysis, as provided in PGP No. 205-30, preceded its adoption as the Department’s designated drug screening method in August 2005. They noted that RIAH analysis had been conducted on probationary police officers subject to medical examination at the end of the probationary period and on those “as to whom NYPD had a reasonable suspicion for testing” or who voluntarily submitted to testing.
Supreme Court granted the petition, annulling the agency determination and denying a cross motion by OCB that sought to dismiss the proceeding. The court held that it was “arbitrary and capricious for [OCB] to rule that the choice of testing methodology and the implementation of procedures for administering that test were not sufficiently connected to the Police Commissioner’s disciplinary authority to exempt those issues *74 from collective bargaining” (NYLJ, Jan. 4, 2008, at 28, col 1). The court concluded that agency precedents holding the method of drug screening to be an appropriate subject of collective bargaining had been superseded by the Court of Appeals’ decision in Patrolmen’s Benevolent Assn. (6 NY3d 563 [2006]), reasoning that the Court had endorsed “the principle articulated by the Appellate Division below that even matters which previously may have been considered to be ‘ancillary’ or only ‘tangentially’ related to the disciplinary function are in reality essential to the effective administration of discipline” (id., quoting 13 AD3d at 881). Supreme Court opined that “requiring that drug screening methodologies and practices be submitted to collective bargaining seriously limits the Commissioner’s ability to effectively enforce discipline within the New York City Police Department,” stating:
“To say that the Commissioner has the authority to screen for drug use among police officers but must negotiate with those same officers as to which test will be used, to whom it will be administered, when it will be administered, how it will be administered, etc., renders the Commissioner’s authority illusory and meaningless in any practical sense.” (Id.)
Public policy strongly favors the use of collective bargaining (see Matter of Cohoes City School Dist. v Cohoes Teachers Assn., 40 NY2d 774, 778 [1976]) and procedures agreed upon by public employers and their employee organizations for the resolution of disputes over the implementation of their collective bargaining agreement (Board of Educ. of Union Free School Dist. No. 3 of Town of Huntington v Associated Teachers of Huntington, 30 NY2d 122, 131 [1972]). “Public employers must, therefore, be presumed to possess the broad powers needed to negotiate with employees as to all terms and conditions of employment. The presumption may, of course, be rebutted by showing statutory provisions which expressly prohibit collective bargaining as to a particular term or condition” (id. at 130). Unless NYPD is barred by public policy from negotiating the terms of its drug testing program, it must bargain with the police unions before implementing changes in testing procedures.
Where a well-established mechanism for the resolution of the competing interests of public employees and management is challenged on the ground that it impermissibly intrudes on managerial authority, the first consideration is the nature and extent of the authority claimed to be infringed. Petitioners *75 contend that the investigatory power extended to the Police Commissioner by statute pursuant to his authority to oversee discipline and administer punishment extends to the hair analysis testing at issue. They rely on the disciplinary powers conferred upon the Police Commissioner by New York City Charter § 434 (a), which provides: “The commissioner shall have cognizance and control of the government, administration, disposition and discipline of the department, and of the police force of the department.”
Administrative Code § 14-115 (a) affords the Commissioner discretion to punish an officer for misconduct.[2] Section 14-115 (b) specifies the procedure to be followed before a penalty is imposed:
“Members of the force . . . shall be fined, reprimanded, removed, suspended or dismissed from the force only on written charges made or preferred against them, after such charges have been examined, heard and investigated by the commissioner or one of his or her deputies upon . . . reasonable notice to the member or members charged.”
Petitioners do not suggest that the control over the Police Department vested in the Commissioner by statute precludes collective bargaining with employee organizations. The case law relied upon by petitioners in support of their position merely prohibits, as a matter of public policy, interference with the prerogative of an agency to conduct an investigation. In Patrolmen’s Benevolent Assn. (6 NY3d at 570), the provisions of the collective bargaining agreement at issue involved procedures pertaining to the investigation and resolution of disciplinary proceedings by the Police Department.[3] In Matter of City of New York v *76 Uniformed Fire Officers Assn., Local 854, IAFF, AFL-CIO (95 NY2d 273 [2000], affg 263 AD2d 3 [1999]), relied on by petitioners, the public policy at stake was the Department of Investigation’s mandate to ensure the honest workings of the City through criminal investigation of its internal affairs (see 263 AD2d at 7-8).
The matter at bar, by contrast, does not implicate the Police Commissioner’s discretion to conduct an investigation into an alleged infraction by a member of the force, a prerogative that arises only after written charges have been preferred (Administrative Code § 14-115 [b]). Petitioners attempt to surmount this shortcoming by characterizing routine drug testing as “ancillary” to the Commissioner’s disciplinary powers, intimating that hair analysis should not be subject to collective bargaining because it might disclose drug use that would then constitute a basis for disciplinary proceedings. However, the Department’s own operational procedures limit the use of such testing to the determination of whether to confer full member status upon probationary officers and the investigation of those full members of the force suspected of illegal drug use. In the former instance, testing is employed in connection with a general investigation into the background of a candidate prior to permanent admission to the police force, the propriety of which is not in question. In the latter instance, testing is performed in the course of a formal investigation into charges brought against a member of the Department that are deemed to be supported by reliable information. Significantly, petitioners point to no instance in which hair analysis has previously been authorized for nonconsensual testing of a full member of the force outside the context of a departmental investigation.
Petitioners seek to avoid their obligation to engage in collective bargaining with respect to routine drug testing of NYPD members by extending the investigatory authority granted to the Commissioner beyond the context of formal disciplinary
*77 proceedings to which it is confined. The limitation placed upon the scope of such authority must be construed as reflecting a balance struck by the Legislature between the competing public policy concerns of encouraging collective bargaining with public employees, on the one hand, and committing the discipline of the City’s police force to the Commissioner, on the other (see Patrolmen’s Benevolent Assn., 6 NY3d at 574 [NY City Charter § 434 (a) and Administrative Code § 14-115 (a) originally enacted as state statutes]). Nor do we read the Court of Appeals’ opinion in Patrolmen’s Benevolent Assn, as adopting the view that the power of the Police Commissioner to implement procedures without resort to collective bargaining extends to matters that are ancillary or only tangentially related to his disciplinary function (cf. Patrolmen’s Benevolent Assn., 13 AD3d at 881).
Accordingly, the judgment of the Supreme Court, New York County (Lottie E. Wilkins, J.), entered December 27, 2007, which granted the petition and annulled the determination of respondent New York City Office of Collective Bargaining finding that petitioners violated the collective bargaining agreement with respondent unions, should be reversed, on the law, without costs, the petition denied, the determination of the Office of Collective Bargaining reinstated, and the proceeding dismissed.
Lippman, EJ., Gonzalez, Buckley and Catterson, JJ., concur.
Judgment, Supreme Court, New York County, entered December 27, 2007, reversed, on the law, without costs, the petition denied, the determination of the Office of Collective Bargaining reinstated, and the proceeding dismissed.

. The Patrolmen’s Benevolent Association and its president have withdrawn their appeal pursuant to stipulation.

. Administrative Code § 14-115 (a) provides, in relevant part: “The commissioner shall have power, in his or her discretion, on conviction by the commissioner, or by any court or officer of competent jurisdiction, of a member of the force of any criminal offense, or neglect of duty, violation of rules, or neglect or disobedience of orders, or absence without leave, or any conduct injurious to the public peace or welfare, or immoral conduct or conduct unbecoming an officer, or any breach of discipline, to punish the offending party by reprimand, forfeiting and withholding pay for a specified time, suspension, without pay during such suspension, or by dismissal from the force.”

. In dispute were provisions: “(1) that police officers being questioned in a departmental investigation would have up to four hours to confer with counsel; *76 (2) that certain guidelines for interrogation of police officers would remain unchanged; (3) that a joint subcommittee’ would ‘develop procedures’ to assure the timely resolution of disciplinary charges; (4) that a pilot program would be established to refer disciplinary matters to an agency outside the police department; and (5) that employees charged but not found guilty could petition to have the records of disciplinary proceedings expunged.
[The Public Employment Relations Board] found that all these provisions concerned ‘prohibited subjects of bargaining’ ” (Patrolmen’s Benevolent Assn., 6 NY3d at 570).