Prince George's County Police Civilian Employees Association v. Prince George's County, Maryland on behalf of Prince George's County Police Department, No. 1, September Term, 2015

**ARBITRATION – MD. CODE ANN., CTS. & JUD. PROC. (1973, 2013 REPL. VOL.) § 3-224(b)(3) – EXCEEDING ARBITRATOR'S POWERS – AUTHORITY TO CONTRACT –** Court of Appeals held that, under county's code, county lacked the authority to enter into collective bargaining agreement requiring that, before criminal investigative interview of one of county's police civilian employees, employee be advised of right to have union representative present at interview, *i.e.*, that employee be advised of <u>Weingarten</u> right; thus, arbitrator exceeded his authority by basing arbitration award on determination that county violated collective bargaining agreement because officers of law enforcement agency's criminal investigations division failed to advise employee of right to have union representative present during interview.

Circuit Court for Prince George's County
Case No. CAL13-02378

Argued: September 2, 2015
Reargued: March 8, 2016

IN THE COURT OF APPEALS

OF MARYLAND

No. 1

September Term, 2015

_____

PRINCE GEORGE'S COUNTY POLICE
CIVILIAN EMPLOYEES ASSOCIATION

v.

PRINCE GEORGE'S COUNTY,
MARYLAND ON BEHALF OF PRINCE
GEORGE'S COUNTY POLICE
DEPARTMENT

_____

Barbera, C.J.
*Battaglia
Greene
Adkins
McDonald
Watts
Harrell, Jr., Glenn T. (Retired,
Specially Assigned),

JJ.

_____

Opinion by Watts, J.

_____

Filed: April 22, 2016

*Battaglia, J., now retired, participated in the hearing and
conference of this case while an active member of this
Court; after being recalled pursuant to the Constitution,
Article IV, Section 3A, she also participated in the
decision and adoption of this opinion.

This case raises an important issue of first impression in Maryland—namely, whether a county has the authority under the county's code to enter into a collective bargaining agreement requiring that, before a criminal investigative interview of one of the county's police civilian employees, the employee be advised of the right to have a union representative present at the interview—*i.e.*, that the employee be advised of a <u>Weingarten</u> right in the collective bargaining agreement.

An employee's <u>Weingarten</u> right arises out of an employer-employee relationship where the employer subjects the employee to an investigatory interview. Generally, an employee's <u>Weingarten</u> right is the employee's right under the National Labor Relations Act "to refuse to submit without union representation to an interview [that the employee] reasonably fears may result in [the employee's] discipline[.]" <u>Nat'l Labor Relations Bd. v. J. Weingarten, Inc.</u>, 420 U.S. 251, 256, 260 (1975). <u>Weingarten</u> does not grant the members of the union in this case the <u>Weingarten</u> right, because the National Labor Relations Act does not apply to an employee of a State or local government. Here, we use the phrase "<u>Weingarten</u> right" to refer to the right to a union representative that is embodied in Article 8.C. of the instant collective bargaining agreement.

This case emanates from the circumstance that Prince George's County ("the County"), Respondent/Cross-Petitioner, terminated the employment of Marlon Ford ("Ford"), a member of the Prince George's County Police Civilian Employees Association ("the Association"), Petitioner/Cross-Respondent, after a criminal investigation during which Ford was questioned regarding alleged crimes and an internal affairs investigation during which Ford was questioned regarding alleged misconduct as an employee.

Following Ford's termination, the Association filed a grievance on Ford's behalf, and the parties participated in arbitration. The arbitrator vacated the County's termination of employment, imposed a thirty-day suspension instead, and granted Ford back pay. The arbitrator based the arbitration award, in part, on the determination that the County had violated a collective bargaining agreement between the County and the Association because officers of the Prince George's County Police Department's Criminal Investigations Division failed to advise Ford of the right to have a representative from the Association present during the criminal investigative interview that yielded information that later formed part of the basis for his termination.

The case involves a total of four issues: (I) whether the County had the authority to enter into a collective bargaining agreement that requires a Weingarten advisement before a criminal investigative interview of one of the County's police civilian employees; (II) whether the provision in the collective bargaining agreement that mandates Weingarten advisements before investigatory interviews applies to criminal investigative interviews; (III) whether the arbitration award violates a public policy of effective law enforcement; and (IV) whether the arbitrator had the authority to award reinstatement and back pay to the employee.

We hold that, under the County's code, the County lacked the authority to enter into a collective bargaining agreement that requires a Weingarten advisement before a criminal investigative interview of one of the County's police civilian employees; thus, the arbitrator exceeded his authority by basing the arbitration award on the determination that the County had violated the collective bargaining agreement because officers of the Criminal

Investigations Division failed to make a <u>Weingarten</u> advisement.[1]

## BACKGROUND

### The Arbitration Award

On August 26, 2011, the County terminated the employment of Ford, who had been working in a motor pool of the Prince George's County Police Department and who was a member of the Association. In issuing an award, the arbitrator construed Article 8.C. of the collective bargaining agreement to provide that Ford was entitled to a <u>Weingarten</u> advisement before the criminal investigative interview.

The arbitrator found the following facts, which we summarize. Article 8.C. of the collective bargaining agreement states in pertinent part:

> When an employee . . . is to be the subject of an investigatory interview or other meeting [that] may result in discipline, he/she shall be informed in writing at least five (5) working days prior to the start of the interview . . . of his/her right to have present, upon request, a[n Association] representative . . . . [I]f an immediate interview is required[,] and the designated [Association] representative is unavailable, the employee may select another [Association] representative who can be present during the investigatory interview.

Article 8.I. of the collective bargaining agreement stated in pertinent part:

> The [County] will not initiate disciplinary action against an employee later than ninety (90) calendar days after the occurrence (or after the [County] was

---

[1] In light of our holding that the County lacked the authority to enter into a collective bargaining agreement requiring <u>Weingarten</u> advisements before criminal investigative interviews—which is dispositive as to the outcome of this case—we do not address the following issues: namely, whether the relevant provision of the collective bargaining agreement can be interpreted to apply criminal investigative interviews, and whether the arbitration award violates a public policy of effective law enforcement. With respect to whether the arbitrator had the authority to award reinstatement and back pay, for the reasons explained within, the case shall be remanded for further proceedings consistent with this opinion.

aware of the occurrence) of the alleged infraction or violation of Departmental rules or regulations or of the Personnel Law. . . . These time limits shall apply to alleged infractions or violations [that] affect only the [County]-employee relationship. They shall not apply to alleged violations or infractions [that] are also criminal violations nor to non-criminal violations [that] are related to an active criminal investigation.

Ford was the subject of two investigations: a criminal investigation of allegations of theft of a handgun, impersonation of a law enforcement officer, and use of law enforcement vehicles; and an internal affairs investigation of Ford's conduct as an employee. On May 15, 2011, a law enforcement officer reported that her handgun was missing. On May 16, 2011, after advising Ford of his Miranda rights[2] (which Ford waived in writing), but without advising Ford of his Weingarten right, officers of the Prince George's County Police Department's Criminal Investigations Division interviewed Ford. The interview took fourteen hours and lasted into the morning of May 17, 2011. With regard to the interview, the arbitrator found:

> After a very brief exchange about the missing [hand]gun, the [interview] focused entirely on [Ford]'s performance of his job, especially whether [Ford] had on multiple occasions impersonated a [law enforcement] officer and had driven [law enforcement] vehicles as if he were an officer on duty, even pulling over speeding cars[] using [the law enforcement] vehicle's air horn . . . . [N]ot to characterize the [] interview . . . as an investigatory interview that may [have] result[ed] in discipline would be unrealistic . . . . [T]he inquiry became [about Ford]'s behavior as an employee who, from time to time, drove, refueled[,] and maintained [law enforcement] vehicles[.[3]]

---

[2]See Miranda v. Arizona, 384 U.S. 436 (1966).

[3]Although the arbitrator stated that the second part of the interview—as to Ford's alleged impersonation of a law enforcement officer and use of law enforcement vehicles— concerned Ford's "performance of his job" and "behavior as an employee[,]" as discussed below, both impersonation of a law enforcement officer and unauthorized removal of law enforcement vehicles are crimes. See Md. Code Ann., Pub. Safety (2003, 2011 Repl. Vol.,

The arbitrator noted that, at the arbitration hearing, the County argued that the decision to discharge Ford was supported by Ford's own admissions.[4]

On the same day, the officers of the Criminal Investigations Division also interviewed Khari Grooms ("Grooms"), an acquaintance of Ford's. Grooms told the officers of the Criminal Investigations Division that Ford had told Grooms that he was a law enforcement officer, and had taken Grooms on multiple "ride-alongs." The arbitrator found: "Many of Grooms'[s] assertions were denied by [Ford], but[,] ultimately[,], the [officers of the Criminal Investigations Division] believed Grooms'[s] version of events."

On May 17, 2011, Ford was placed on administrative leave due to the ongoing criminal investigation. In a written notice dated July 6, 2011, the Prince George's County Police Department's Internal Affairs Division notified Ford of an investigation regarding whether Ford had used law enforcement vehicles without authorization for personal reasons; in the notice, the Internal Affairs Division advised Ford of his Weingarten right.

---

2015 Supp.) § 3-502 (Impersonating Police Officer); Md. Code Ann., Crim. Law (2002, 2012 Repl. Vol.) § 7-203 (Unauthorized Removal of Property). In any event, the arbitrator correctly recognized that the issue was whether Article 8.C. applied to criminal investigations; specifically, in summarizing the parties' positions, the arbitrator stated: "The [Association] rejects the [County]'s claim that Article 8[.]C[.] does not apply to criminal investigations . . . . The [C]ounty devotes most of its post-hearing brief to the *Weingarten* issue, claiming that Article 8[.C.] does not apply to investigatory interviews that are related to active criminal investigations."

[4]The record contains an "Investigator's Activity Summary," which includes an entry dated May 16, 2011; in the entry, a detective alleged that, during the interview, Ford "admitted to driving an unmarked [law enforcement vehicle] . . . [and] using the emergency equipment (air horn) . . . . on citizens traveling the roads at high speeds." The record also contains a "Report of Investigation" dated July 26, 2011; in the Report of Investigation, an acting sergeant referenced the detective's allegation in the Investigator's Activity Summary.

On the same day, with a representative from the Association present, a member of the Internal Affairs Division interviewed Ford. On July 19, 2011, with a representative from the Association present, a member of the Internal Affairs Division performed another interview of Ford. The arbitrator found: "It would be unrealistic to claim that [the May 16-17 interview by the officers of the Criminal Investigations Division] was wholly unrelated to the [Internal Affairs Division] investigation that began on July 6," 2011.

On August 12, 2011, Ford was issued a "Notice of Intent, Proposed Disciplinary Action (Conduct Related)." On August 26, 2011, Ford was issued a "Notice of Final Disciplinary Action (Conduct Related)," which advised that he had been terminated because of nine alleged violations of State and local law. Specifically, the Notice of Final Disciplinary Action advised that Ford had been terminated for allegedly violating: Prince George's Cnty. Code ("PGCC") § 18-160(b) ("No member of the Police Department, under any circumstances, shall make any . . . intentional misrepresentation of facts.") by making a false statement during the May 16, 2011 interview and a false statement during the July 19, 2011 interview;[5] PGCC § 18-160(a) ("No member of the Police Department shall intentionally violate any law of . . . any state[.]") and Md. Code Ann., Crim. Law (2002, 2012 Repl. Vol.) ("CR") § 7-203 (Unauthorized Removal of Property) by "tak[ing]

_____

[5]Specifically, on May 16, 2011, Ford allegedly falsely stated that he had not driven any marked law enforcement vehicles and that he had not responded to any calls for service while operating a marked law enforcement vehicle; and, on July 19, 2011, Ford allegedly falsely stated that he did not stay at Headquarters after 10:00 p.m. or 11:00 p.m.

unmarked [law enforcement] vehicle[s] . . . without authorization" on six occasions;[6] and PGCC § 18-160(a) and Md. Code Ann., Pub. Safety (2003, 2011 Repl. Vol., 2015 Supp.) ("PS") § 3-502 (Impersonating Police Officer) by falsely identifying himself to Grooms as a law enforcement officer.[7]

The arbitrator found that Ford had not intentionally engaged in criminal behavior, but had used bad judgment by acting in ways that caused others to assume that he was a law enforcement officer, and by not disavowing that impression when it clearly had been internalized by Grooms and perhaps by others. The arbitrator sustained Ford's grievance, vacated the County's termination of his employment, imposed a thirty-day suspension instead, and granted back pay to Ford. The arbitrator based the arbitration award on the following findings: (1) Ford never "acted with the intent that would be required to prove that he [committed] the crimes [that were] enumerated in the charges against him"; (2) the County's "personnel procedures . . . encourage progressive discipline"; (3) the County's personnel "procedures also recommend that mitigating factors . . . be taken into consideration," and Ford's misconduct was mitigated by his "excellent employment record"; and (4) the County violated the collective bargaining agreement because the

---

[6]It appears that Ford's alleged use of the vehicles was unauthorized not because of what Ford allegedly did while driving the vehicles, but instead because Ford allegedly drove the vehicles after hours. The record contains a "Report of Investigation" dated July 26, 2011; in the Report of Investigation, an acting sergeant alleged that, according to Ford's "access card history[,]" he refueled vehicles after hours on six dates. The six dates that are listed in the Report of Investigation seem to correspond to the six dates that are listed in the Notice of Final Disciplinary Action (Conduct Related).

[7]The Notice of Final Disciplinary Action (Conduct Related) inadvertently referred to CR § 3-502 instead of PS § 3-502.

officers of the Criminal Investigations Division failed to advise Ford of his <u>Weingarten</u> right.[8] The County filed a petition to vacate the arbitration award, which the Circuit Court for Prince George's County ("the circuit court") denied.

**Proceedings in the Court of Special Appeals**

The County appealed, and the Court of Special Appeals vacated both the circuit court's judgment and the arbitration award and remanded for a rehearing before a new arbitrator, holding in pertinent part that the arbitration award was contrary to an explicit, dominant, and well-defined public policy of effective law enforcement. <u>See</u> <u>Prince George's Cnty., Md. ex rel. Prince George's Cnty. Police Dep't v. Prince George's Cnty. Police Civilian Emps. Ass'n</u>, 219 Md. App. 108, 137, 134, 98 A.3d 1094, 1111, 1109 (2014).

In its analysis, the Court of Special Appeals did not address whether the County had the authority to enter into a collective bargaining agreement that requires a <u>Weingarten</u> advisement before a criminal investigative interview of one of the County's employees. Instead, the Court of Special Appeals held that "expanding the requirement of [the] *Weingarten* right[] to union employees [who] are the focus of a criminal investigation violates public policy[,]" <u>id.</u> at 129-30, 98 A.3d at 1107; that "the arbitrator's award. . . constrains the ability of the [Prince George's County Police Department] to conduct

---

[8]The collective bargaining agreement required five working days' notice of Ford's <u>Weingarten</u> right, but stated that "an immediate interview" could be "required[.]" In any event, the arbitrator found that the officers of the Criminal Investigations Division failed to advise Ford of his <u>Weingarten</u> right at all, either immediately before the interview or five working days in advance of the interview.

criminal investigations and interrogations of [Association] members[,]" id. at 132, 98 A.3d at 1108; and that "[t]he serious crime of theft of a [law enforcement] officer's [handgun] and impersonating a [law enforcement] officer cannot give way to an employee's *Weingarten* right[]. To do so . . . would interfere with the [Prince George's County Police Department]'s ability to investigate crimes and violate the public policy of effective law enforcement," id. at 134, 98 A.3d at 1109.

In other words, although the Court of Special Appeals held that the arbitrator's award violated public policy, the Court of Special Appeals did not assess whether the County had the authority to bargain/contract away the ability to conduct criminal investigations without making Weingarten advisements; rather, the Court of Special Appeals held that the violation of public policy arose because giving the Weingarten advisement would interfere with the police department's ability to investigate crime.

### Proceedings in this Court

The Association petitioned for a writ of *certiorari,* raising one issue: "[Did] the Court of Special Appeals err[] when it declared a public policy that was contrary to well-established rules . . . ?" The County cross-petitioned for a writ of *certiorari,* raising only the issue concerning reinstatement and back pay. This Court granted the petition and the cross-petition. See Prince George's Cnty. Police Civilian Emps. v. Prince George's Cnty., 441 Md. 217, 107 A.3d 1141 (2015).

On September 2, 2015, we heard oral argument as to these two issues. On November 24, 2015, we ordered supplemental briefing and reargument as to the following two issues:

1. Did the negotiators of the collective bargaining agreement between [the] County and the [] Association have the authority to enter into a contractual provision that extends a *Weingarten* right to criminal investigations?

2. As a matter of contract interpretation, does Article 8.C. of the collective bargaining agreement apply to criminal investigations?

The parties filed supplemental briefs. On March 8, 2016, we heard reargument.

## DISCUSSION

### The Parties' Contentions

In its supplemental brief, the Association contends that the County had the authority to enter into a collective bargaining agreement requiring that a criminal investigative interview of one of its civilian employees not occur without a <u>Weingarten</u> advisement being given to the employee. The Association relies on PGCC § 13A-109(a), which states in pertinent part: "The employer[9] and the exclusive [collective bargaining] representative . . . shall negotiate in good faith with respect to wages, hours and other terms and conditions of employment [that] are subject to negotiation under this law[.]" Specifically, the Association argues that a <u>Weingarten</u> advisement is a term or condition of employment that is subject to good faith negotiation under PGCC § 13A-109(a). Alternatively, the Association asserts that this Court cannot conclude that the County lacked the authority to enter into a collective bargaining agreement that requires a <u>Weingarten</u> advisement before

---

[9]"Employer means . . . any governmental body operating within the County [that] elects to have the definition of employee [] in [PGCC §] 13A-102(g) [] extended to include its employees pursuant to [PGCC §] 13A-116 [], or any person acting as an agent of said governmental body." PGCC § 13A-102(h). Here, the parties do not dispute that the County meets PGCC § 13A-102(h)'s definition of "employer," and thus is subject to PGCC § 13A-109(a).

- 10 -

a criminal investigative interview of one of the County's employees, as the County did not "submit th[e] question of negotiability to" the Prince George's County Public Employee Relations Board.

In its supplemental brief, the County responds that PGCC § 13A-109(a) does not confer upon the County the authority to negotiate a collective bargaining agreement that affects the manner in which the Prince George's County Police Department conducts criminal investigations. The County argues that PGCC § 13A-109(a) is unambiguous in that it cannot be construed to grant the County such authority. The County asserts that, to the extent that the collective bargaining agreement purports to mandate Weingarten advisements during criminal investigations, the collective bargaining agreement is *ultra vires*.[10]

**Standard of Review**

An appellate court reviews without deference a trial court's ruling on a petition to vacate an arbitration award. See Balt. Cnty. Fraternal Order of Police Lodge No. 4 v. Balt.

---

[10]The County contends that extending a Weingarten right to criminal investigations violates Article 9 (Power of Suspension or Execution of Laws) of the Maryland Declaration of Rights and the Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and of Section 201 of the Charter for Prince George's County ("No person shall be . . . denied the equal protection of the laws."). However, given our holding in the County's favor and this Court's policy of not deciding constitutional issues unnecessarily, we do not, and need not, reach the constitutional issue raised by the County. See, e.g., VNA Hospice of Md. v. Dep't of Health and Mental Hygiene, 406 Md. 584, 606, 961 A.2d 557, 570 (2008) ("[T]his Court will avoid deciding the constitutional issues and decide the case on a non-constitutional ground if reasonably possible."); Prof' Staff Nurses Ass'n v. Dimensions Health Corp., 346 Md. 132, 138, 695 A.2d 158, 161 (1997) ("This Court has regularly adhered to the principle that we will not reach a constitutional issue when a case can properly be disposed of on a non-constitutional ground." (Citation, brackets, and internal quotation marks omitted)).

- 11 -

Cnty., 429 Md. 533, 565, 540-41, 57 A.3d 425, 443, 429 (2012) (This Court reviewed for "legal[] correct[ness]" a trial court's grant of summary judgment in a case that was based on a complaint to vacate an arbitration award.).

"[A]rbitration is favored and encouraged in Maryland because it provides an informal, expeditious, and inexpensive alternative to conventional litigation." Amalgamated Transit Union v. Lovelace, 441 Md. 560, 576, 109 A.3d 96, 106 (2015) (citation and internal quotation marks omitted). Accordingly, "judicial review of an arbitration award is very narrowly limited[.]" Downey v. Sharp, 428 Md. 249, 268, 51 A.3d 573, 585 (2012) (citation omitted). "[C]ourts generally defer to [an] arbitrator's findings of fact and applications of law. Mere errors of law and fact do not ordinarily furnish grounds for a court to vacate . . . an arbitration award." Id. at 266, 51 A.3d at 583 (brackets, citations, ellipsis, and internal quotation marks omitted).

Accordingly, in Amalgamated Transit Union, Div. 1300 v. Mass Transit Admin., 305 Md. 380, 388, 504 A.2d 1132, 1136 (1986), this Court quoted Judge Thurgood Marshall's opinion in Local 453, Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO v. Otis Elevator Co., 314 F.2d 25, 28 (2d Cir. 1963), cert. denied, 373 U.S. 949 (1963), as an illustration of the principle that a court may not substitute its interpretation of a contract for an arbitrator's:

> Having bargained for the decision of the arbitrator on the question of whether [an employee]'s conduct and criminal conviction constituted "just cause" for discharge, the parties are bound by it, even if it be regarded as unwise or wrong on the merits; "so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling [the arbitration award] because their interpretation of the contract is different from [the arbitrator's]." *United Steelworkers of America v. Enterprise Wheel & Car*

*Corp.*, 363 U.S. 593, 599[] (1960).

Md. Code Ann., Cts. & Jud. Proc. (1973, 2013 Repl. Vol.) ("CJ") § 3-224(b)

provides some of the limited grounds for judicial review of an arbitration award as follows:

> [A] court shall vacate an [arbitration] award if: (1) An [arbitration] award was procured by corruption, fraud, or other undue means; (2) There was evident partiality by an arbitrator appointed as a neutral, corruption in any arbitrator, or misconduct prejudicing the rights of any party; (3) The arbitrators exceeded their powers; (4) The arbitrators refused to postpone the hearing upon sufficient cause being shown for the postponement, refused to hear evidence material to the controversy, or otherwise so conducted the hearing, contrary to the provisions of [CJ] § 3-213 [(Arbitration Hearing and Notice)]] as to prejudice substantially the rights of a party; or (5) There was no arbitration agreement as described in [CJ] § 3-206 [(Validity of Arbitration Agreements)], the issue was not adversely determined in proceedings under [CJ] § 3-208 [(Stay of Arbitration)], and the party did not participate in the arbitration hearing without raising the objection.

(Paragraph breaks omitted).[11]

**Maryland Case Law and Authority from Other Jurisdictions**

This case implicates the third statutory ground for judicial review of an arbitration award—namely, whether an "arbitrator[] exceeded [the arbitrator's] powers[.]" CJ § 3-224(b)(3). In Downey, 428 Md. at 263, 51 A.3d at 582, this Court explained that the issue of whether an arbitrator exceeded the arbitrator's authority is not the same as the issue of whether the arbitration award was rational or legally correct. In Downey, id. at 256-57, 51 A.3d at 578, a trial court granted a petition to confirm an arbitration award. The Court of

---

[11]A court also vacates an arbitration award "that is contrary to [a] public policy" that is "explicit[,]" "dominant," and "well[-]defined" by "laws and legal precedents" (as opposed to "general considerations of supposed public interests"). Amalgamated Transit Union, Div. 1300, 305 Md. at 389, 504 A.2d at 1136 (citations and internal quotation marks omitted).

Special Appeals reversed the trial court's judgment and remanded the case to the trial court with instructions to vacate several findings within the arbitration award because the arbitrator exceeded his authority. See id. at 258-59, 51 A.3d at 579-80. The Court of Special Appeals reasoned that the arbitrator exceeded his authority because the arbitration award was "completely irrational" and in "manifest disregard of the law." Id. at 262, 51 A.3d at 581-82. This Court disagreed with the reasoning of the Court of Special Appeals, stating:

> The Court of Special Appeals'[s] reliance on [CJ] § 3-224(b)(3), i.e., the statutory ground [for review] of an [arbitration] award [that] exceeds the arbitrator's powers, is . . . misplaced. . . . [A]n issue or matter [that is] resolved by an [arbitration] award may be rational and legally correct[,] but the arbitrator, under the arbitration agreement, may have had no power or authority to resolve the particular issue. On the other hand, an issue may have clearly been within the arbitrator's powers, but the arbitrator's resolution of the issue may have been irrational or manifestly erroneous as a matter of law. . . . Consequently, **judicial review of an arbitrat[ion] award on the basis of "irrationality" or "manifest error of law" does not fall within any of the grounds [] in [CJ] § 3-224(b)**[.]

Id. at 263, 51 A.3d at 582 (emphasis added). Our holding in Downey, id. at 263, 51 A.3d at 582, makes clear that the issue of whether an arbitrator exceeded the arbitrator's authority is not the same as the issue of whether the arbitration award was legally correct. That said, none of this Court's precedent indicates that a court must give any deference to an arbitration award where the issue is whether the arbitrator exceeded the arbitrator's powers.

Indeed, this Court's precedent leads to the conclusion that an arbitrator exceeds the arbitrator's authority by issuing an award that arises out of a contract that one party lacked the authority to enter. In Bd. of Educ. of Charles Cnty. v. Educ. Ass'n of Charles Cnty.,

- 14 -

286 Md. 358, 366-67, 259, 408 A.2d 89, 93, 89 (1979), this Court upheld an arbitration award where, several months after the arbitrator issued the arbitration award, a party challenged the arbitration award on the ground that the arbitrator had exceeded his powers by enforcing an illegal contract. This Court concluded that the party's challenge was untimely under CJ § 3-224(a)(1), which, both now and at the time of Bd. of Educ. of Charles Cnty., stated: "[A] petition to vacate [an arbitration] award shall be filed within [thirty] days after delivery of a copy of the [arbitration] award to the petitioner." Bd. of Educ. of Charles Cnty., 286 Md. at 366-67, 360, 408 A.2d at 93, 90. More broadly, this Court "h[e]ld that the provisions of [CJ §] 3-227 [(Confirmation of Award by Court)],[12] as well as the provisions of [CJ §] 3-224, are mandatory. A trial court must confirm an arbitration award unless the [arbitration] award is challenged within the applicable time constraints." Bd. of Educ. of Charles Cnty., 286 Md. at 366, 408 A.2d at 93.

Both now and at the time of Bd. of Educ. of Charles Cnty., id. at 360, 408 A.2d at 90, CJ § 3-224(b)(3) stated: "The court shall vacate an [arbitration] award if . . . [t]he arbitrators exceeded their powers[.]" Significantly, in Bd. of Educ. of Charles Cnty., id. at 366, 408 A.2d at 93, this Court stated:

> The provisions and time constraints of [CJ §§] 3-227 and [] 3-224 apply equally, whether the arbitration award is challenged on the ground that the underlying contract is invalid because of fraud or on the ground that the arbitrator **exceeded his [or her] powers because the underlying contract was illegal**. . . . [CJ §§] 3-224 and 3-227 establish an orderly mechanism

---

[12]Both now and at the time of Bd. of Educ. of Charles Cnty., 286 Md. at 360, 408 A.2d at 89, CJ § 3-227(b) stated: "The court shall confirm [an arbitration] award, unless the other party has filed an application to vacate, modify, or correct the [arbitration] award within the time provided in [CJ] §§ 3-222 [(Modification or Correction of Award)] and 3-223 [(Correction or Modification of Award by Court)]."

whereby **a court, not an arbitrator, makes the final determination of the legality of a contract** before an arbitration award is enforced.

(Emphasis added). Thus, in <u>Bd. of Educ. of Charles Cnty.</u>, <u>id.</u> at 366, 408 A.2d at 93, although the legality of the underlying contract was not before us, we unequivocally stated that an arbitrator exceeds the arbitrator's powers by issuing an award where the underlying contract is invalid.

With the above jurisprudence in mind, we address the issues of whether the County had the authority to enter into a collective bargaining agreement that requires a <u>Weingarten</u> advisement before a criminal investigative interview of one of the County's police civilian employees, and whether, as a result, the arbitrator exceeded his authority. As noted above, this Court has not previously considered whether a county has the authority to enter into a collective bargaining agreement that requires a <u>Weingarten</u> advisement before a criminal investigative interview of one of the county's police civilian employees. As such, we examine cases in which courts in other jurisdictions have addressed similar issues.

Our inquiry reveals that courts in two other States, Illinois and New York, have addressed the issue of whether public employees had the right to advisements of the right to union representation before interviews by criminal investigators. In <u>Ill. State Police v. Fraternal Order of Police Troopers Lodge No. 41</u>, 751 N.E.2d 1261, 1265, 1263 (Ill. App. 2001), the Appellate Court of Illinois held, among other things, that an arbitrator exceeded his authority by "ruling that [a law enforcement agency could ]not interrogate its employees regarding criminal matters unless it complie[d] with" a collective bargaining agreement under which a non-probationary law enforcement officer had the right to have a union

representative or counsel present during any interview that was part of an "investigation that could result in 'discipline.'"

In <u>Ill. State Police</u>, <u>id.</u> at 1263, members of the law enforcement agency's division of internal investigation interviewed a law enforcement officer as part of a criminal investigation of an alleged insurance fraud scheme. The members of the law enforcement agency's division of internal investigation advised the law enforcement officer of his <u>Miranda</u> rights, but not of his right to have a union representative present during the interview. <u>See</u> <u>id.</u> Although the law enforcement officer did not become the subject of criminal charges or disciplinary action, he filed a grievance in which he alleged that the law enforcement agency violated the collective bargaining agreement. <u>See</u> <u>id.</u>

On three occasions, members of the law enforcement agency's division of internal investigation interviewed a different law enforcement officer about alleged sexual relations with a fourteen-year-old. <u>See</u> <u>id.</u> During the first interview, the investigation was considered a criminal matter; members of the law enforcement agency's division of internal investigation advised the law enforcement officer of his constitutional rights; and, without a union representative present, the law enforcement officer made inculpatory statements. <u>See</u> <u>id.</u> During the second interview, the investigation was considered an administrative matter; a union representative was allowed to be present;[13] and the law enforcement officer recanted his inculpatory statements. <u>See</u> <u>id.</u> at 1263-64. During the third interview, the investigation was still considered an administrative matter, and, again,

---

[13]It is unclear whether the law enforcement officer took advantage of the opportunity to have a union representative present.

- 17 -

a union representative was allowed to be present.  See id. at 1264.  The law enforcement

agency terminated the law enforcement officer, who filed a grievance in which he alleged

that the law enforcement agency had violated the collective bargaining agreement.  See id.

Pursuant to the collective bargaining agreement, the law enforcement officers'

union submitted both officers' grievances to arbitration.  See id.  An arbitrator sustained

both officers' grievances and determined that the law enforcement agency had failed to

comply with the collective bargaining agreement as to the interviews that had been part of

criminal investigations.  See id.  The law enforcement agency filed a complaint to vacate

the arbitration award, and a trial court affirmed the arbitration award.  See id.

The Appellate Court of Illinois began its analysis by recognizing that "judicial

review of an arbitration award is extremely limited." Id. at 1265 (citation omitted).  That

Court noted that one ground for judicial review of an arbitration award is the issue of

whether "the arbitrator act[ed] within the scope of [the arbitrator's] authority[.]"  Id.

(citation omitted).  It bears mention that Maryland law encompasses these principles as

well.  See Downey, 428 Md. at 268, 51 A.3d at 585 ("[J]udicial review of an arbitration

award is very narrowly limited[.]"  (Citation omitted)); CJ § 3-224(b)(3) ("[A] court shall

vacate an [arbitration] award if . . . [t]he arbitrators exceeded their powers[.]").  The

Appellate Court of Illinois noted that another ground for judicial review of an arbitration

award is the issue of whether the arbitration "award draws its essence from the [] collective[

]bargaining agreement." Ill. State Police, 751 N.E.2d at 1265 (citation omitted).

The Appellate Court of Illinois reversed the trial court's judgment and remanded

with instructions to vacate the arbitration award.  See id. at 1267.  That Court provided

three reasons for vacating the arbitration award. First, the arbitrator exceeded his authority because the arbitration award "was not drawn from the essence of the" collective bargaining agreement, id. at 1265; by its own terms, the relevant provision of the collective bargaining agreement did not apply to criminal investigations, see id. ("[T]he terms of [the relevant provision of the collective bargaining agreement] suggest that they apply to disciplinary proceedings, not criminal investigations."). Second, the arbitrator exceeded his authority by "ruling that [the law enforcement agency could ]not interrogate its employees regarding criminal matters unless it complie[d] with the" collective bargaining agreement. Id. And third, the arbitration award "violate[d] the public policy of effective law enforcement." Id. at 1267.[14]

Significantly, as to the second reason for vacating the arbitration award—namely, that the arbitrator exceeded his authority by ruling that the law enforcement agency could not interrogate its employees regarding criminal matters unless it complied with the

---

[14]After concluding that the arbitrator exceeded his authority, the Appellate Court of Illinois stated: "In view of our resolution of this issue, we need not address the remaining arguments, but we choose to address" the issue as to public policy. Ill. State Police, 751 N.E.2d at 1266. The Court concluded that "an established public policy unquestionably exist[ed] promoting effective law enforcement" and that "[c]omplying with the administrative procedures under [the collective bargaining agreement] would be detrimental to conducting effective law enforcement." Id. at 1266, 1267. The Appellate Court of Illinois's analysis of the issue as to public policy is an alternative holding, and, as such, is *dicta*.

Here, although the Association raised an issue as to public policy in the petition for a writ of *certiorari*, courts in Illinois and New York have resolved similar cases primarily on the separate issue of the employers' ability to enter into the collective bargaining agreements. In determining that the arbitrators' awards were not enforceable, neither the Illinois court nor the New York court relied primarily on its analysis as to public policy. As such, we do not address the issue as to public policy.

collective bargaining agreement—the Appellate Court of Illinois explained:

> **[A]n employer cannot by contract give its employees procedural rights and benefits regarding criminal investigations.** The fact that the employer in this case is the Illinois State Police is immaterial. Clearly, when [the Illinois State Police] is investigating an employee's criminal conduct, it is acting under its statutory duty to enforce the laws of the State of Illinois, not as an employer.

Ill. State Police, 751 N.E.2d at 1266 (emphasis added) (citation omitted).

The Appellate Division of the Supreme Court of New York reached a similar conclusion in City of New York v. Uniformed Fire Officers Ass'n, Local 854, IAFF, AFL-CIO, 699 N.Y.S.2d 355, 360 (N.Y. App. Div. 1999), aff'd, 739 N.E.2d 719 (N.Y. 2000). In City of New York, 699 N.Y.S.2d at 356, the New York City Fire Department and the firefighters' union were parties to a collective bargaining agreement, under which a firefighter needed to be advised of the firefighter's right to have a union representative present during any interview in which the firefighter was "a suspect in a departmental investigation[.]" The New York City Department of Investigation interviewed firefighters without allowing a union representative to be present. See id. at 357. The firefighters' union filed a grievance and demanded arbitration. See id. at 356. The New York City Board of Collective Bargaining determined that the grievance was arbitrable. See id. at 357. New York City initiated an action to enjoin arbitration of the grievance. See id. A trial court enjoined arbitration of the grievance. See id.

The Appellate Division of the Supreme Court of New York affirmed the trial court's judgment on the ground that arbitration of the grievance was barred by a public policy against "any interference with the authority of the Department [of Investigation] to require

- 20 -

a public employee to answer questions regarding activities that bear upon the performance of official actions." Id. at 360, 359. The Appellate Division of the Supreme Court of New York concluded that it was a "fallacy" to characterize New York City—as opposed to the Fire Department—as the firefighters' "employer" for purposes of determining whether the ability to conduct criminal investigations without making certain advisements could have been bargained away. Id. at 359. The Court stated: "[W]hile the Fire Department may bargain away certain of its own management prerogatives in reaching a labor accord with the [firefighters' union], [the Fire Department] has no power to defeat or impair rights conferred upon another [New York] City agency[—namely, the Department of Investigation—]by statute." Id. Then, however, the Court acknowledged: "Restrictions may be judicially imposed even upon the waiver of an agency's own prerogatives." Id.

The Court indicated that, even if it were New York City—as opposed to the Fire Department—that purportedly bargained away the ability to conduct criminal investigations without making certain advisements, arbitration would still be barred on public-policy grounds. See id. at 360 ("The [] discretion conferred upon the Department [of Investigation] to carry out its mandate would likewise be impermissibly compromised by the restrictions imposed upon its examination of witnesses by the collective bargaining agreement[.]"). Significantly, the Court stated: "Because **the prerogative of the Department [of Investigation] to employ such investigative procedures as it deems appropriate may not be bargained away**, there is no reason to submit to arbitration the question of whether the employee rights provisions of the [] collective bargaining agreement are binding upon the [Department of Investigation]." Id. at 360 (emphasis

- 21 -

added).

## Analysis

Deriving guidance from <u>Ill. State Police</u>, 751 N.E.2d at 1266, and <u>City of New York</u>, 699 N.Y.S.2d at 360, we conclude the County lacked the authority to enter into a collective bargaining agreement that requires a <u>Weingarten</u> advisement before a criminal investigative interview of one of the County's police civilian employees, and, as such, the arbitrator exceeded his authority by basing the arbitration award, in part, on the determination that the County violated the collective bargaining agreement because officers of the Criminal Investigations Division failed to advise Ford of his <u>Weingarten</u> right. <u>Cf.</u> <u>Illinois State Police</u>, 751 N.E.2d at 1266 ("[A]n employer cannot by contract give its employees procedural rights and benefits regarding criminal investigations."); <u>City of New York</u>, 699 N.Y.S.2d at 360 ("[T]he prerogative of the Department [of Investigation] to employ such investigative procedures as it deems appropriate may not be bargained away[.]"). To conclude otherwise would encroach upon the Prince George's County Police Department's statutorily mandated duty to "enforce[] th[e PGCC] and all other laws and ordinances[,]" PGCC § 18-135(a)(5), which obviously includes conducting criminal investigations.

No provision of the Prince George's County Code gives the County the authority to enter into a collective bargaining agreement that requires a <u>Weingarten</u> advisement before a criminal investigative interview of one of the County's police civilian employees. Contrary to the Association's contention, PGCC § 13A-109(a) does not confer on the County the authority to enter into a collective bargaining agreement that requires a

- 22 -

Weingarten advisement before a criminal investigative interview of one of the County's police civilian employees. PGCC § 13A-109(a) states in pertinent part: "The employer and the exclusive [collective bargaining] representative . . . shall negotiate in good faith with respect to wages, hours and other terms and conditions of employment [that] are subject to negotiation under this law[.]" Nothing in PGCC § 13A-109(a) even remotely contemplates that the County may require Weingarten advisements in criminal investigations. In other words, as the County asserts, nothing in PGCC § 13A-109(a) enables the County to "by contract give its employees procedural rights and benefits regarding criminal investigations." Illinois State Police, 751 N.E.2d at 1266. Where an employee is under investigation for having potentially committed a crime, by definition, the suspected criminal conduct, even if committed at the workplace, does not fall within the ambit of the employee's terms and conditions of employment. Stated otherwise, suspected criminal activity is not conduct that is related to an employee's "wages, hours and other terms and conditions of employment[.]" PGCC § 13A-109(a). Indeed, in some instances, an employee may be the subject of a criminal investigative interview regarding criminal activity that is completely unrelated to his or her job. We agree with the County's counsel's assertion at oral argument that, for the County to have the authority to enter into a collective bargaining agreement that requires a Weingarten advisement before a criminal investigative interview of one of the its police civilian employees, there would need to be authority for the County to do so—*e.g.*, a provision of the Prince George's County Code— that would grant the County such authority or, in other words, permit the County to engage in collective bargaining as to the County's duty to enforce the law. PGCC §§ 13A-109(a)

- 23 -

and 18-135 do not come close to conferring upon the County the authority that the Association attributes to it.

We are unpersuaded by the Association's attempt to distinguish Ill. State Police, 751 N.E.2d at 1266, and City of New York, 699 N.Y.S.2d at 360, on the ground that those two cases involved "purely" criminal investigations; by contrast, according to the Association, the instant investigation was not "purely" criminal because, on May 16, 2011, Ford's supervisor "called him into work[ and] compelled him to answer questions[.]" The Association contends that the County has the authority to bind itself to making Weingarten advisements in investigations that are not "purely" criminal.

The Association raises a distinction without a difference. It is immaterial whether an investigation is "purely" criminal. Where an investigation is criminal—purely so or not—the County lacks the authority to bind itself to making Weingarten advisements. This is so because the Prince George's County Police Department has a duty to conduct criminal investigations, see PGCC § 18-135(a), regardless of whether the subject of a criminal investigation is an employee, and regardless of whether the Prince George's County Police Department conducts the criminal investigation as it would with a non-employee—for example, by visiting the employee at the employee's home and asking questions.

At reargument, the Association's counsel asserted that the arbitrator found that, during the May 16-17, 2011 interview of Ford, the County was acting in its capacity as an employer, as opposed to its capacity as an entity that investigates crimes. The Association is mistaken; the arbitrator's findings of fact establish that the May 16-17, 2011 interview of Ford was part of a criminal investigation. Specifically, the arbitrator found that, on May

16-17, 2011, officers of the Criminal Investigations Division—not members of the Internal Affairs Division—interviewed Ford. Additionally, the arbitrator found that the interview concerned alleged crimes—namely, an alleged theft of a handgun, impersonation of a police officer, and unauthorized use of law enforcement vehicles. Although, in the arbitration award, the arbitrator stated that the interview later focused on matters that the arbitrator apparently believed were not criminal in nature, a fair reading of the arbitration award reveals that the arbitrator was well-aware—and, indeed, explicitly found—that the May 16-17, 2011 interview of Ford was part of a criminal investigation and was conducted by members of the Criminal Investigations Division of the Prince George's County Police Department.

We note that the Maryland Law Enforcement Officers' Bill of Rights has no effect upon our decision in this case. The Law Enforcement Officers' Bill of Rights expressly allows counsel or another responsible representative—*e.g.*, a union representative—to be present during an interrogation of the law enforcement officer. See PS § 3-104(j)(1)(i) ("On request, the law enforcement officer under interrogation has the right to be represented by counsel or another responsible representative of the law enforcement officer's choice who shall be present and available for consultation at all times during the interrogation."). The Law Enforcement Officers' Bill of Rights applies only to a law enforcement officer, which it defines as "an individual who[ ] in an official capacity is authorized by law to make arrests" and "is a member of one" among a list of law enforcement agencies. PS § 3-101(e)(1). Thus, the Law Enforcement Officers' Bill of Rights does not apply to Ford and other civilian employees of law enforcement agencies.

- 25 -

Neither the Law Enforcement Officers' Bill of Rights, PGCC § 13A-109(a) ("The employer and the exclusive [collective bargaining] representative . . . shall negotiate in good faith with respect to wages, hours and other terms and conditions of employment [that] are subject to negotiation under this law[.]"), nor any other provision of the Prince George's County Code or the Code of Maryland contemplates, let alone expressly allows, that a union representative be present during a criminal investigative interview of a police civilian employee.[15]

The Association's reliance on the collective bargaining agreement between the State and the American Federation of State, County and Municipal Employees—namely, the provision of that collective bargaining agreement that states: "The right to [union] representation does include a criminal investigation"—for the proposition that the County had the authority to enter into a collective bargaining agreement that requires a Weingarten advisement before a criminal investigative interview of one of the County's employees is misplaced. In contending as much, the Association is not relying on any precedent or case

_____

[15]On a related note, the Association asserts that requiring Weingarten advisements would be good policy because such a requirement could boost employees' morale. The Association's assertion is beside the point. Regardless of whether a requirement of Weingarten advisements would be good for employee morale, the fact remains that no provision of the Prince George's County Code or the Code of Maryland contemplates that such a requirement would apply to civilian employees of law enforcement agencies.

The Association also asserts that requiring Weingarten advisements could help protect employees' privilege against self-incrimination. Contrary to the Association's implication, employees' privilege against self-incrimination is already protected by the right to counsel, which applies to all custodial interrogations. See State v. Conover, 312 Md. 33, 38, 537 A.2d 1167, 1169 (1988) ("The Fifth Amendment right identified in *Miranda* is the right to have counsel present at any custodial interrogation." (Citation omitted)). Indeed, here, the officers of the Criminal Investigations Division advised Ford of his Miranda rights, which Ford waived in writing.

- 26 -

law—instead, the Association simply raises the superficial argument that, if the State decided to require <u>Weingarten</u> advisements, then the County must have had the authority to do the same. In contrast with the State's volitional extension of the <u>Weingarten</u> right to criminal investigations, the County contends that it had neither the authority nor the intent to enter into such an agreement, and argues that the plain language of the instant collective bargaining agreement does not support the conclusion that it did so. In sum, unlike the State, the County expressly asserts that the collective bargaining agreement does not confer upon its police civilian employees the right to a <u>Weingarten</u> advisement before a criminal investigative interview. As a practical matter, the State's collective bargaining agreement was executed on December 30, 2014, over two-and-a-half years after the County entered into the instant collective bargaining agreement on March 30, 2012. Thus, the circumstance that the State expressly contracted to provide union representation during criminal interviews is not subject to the interpretation that the County intended to mirror the State's collective bargaining agreement but, for some reason, failed to include specific terms providing for union representation during criminal investigations.

That the State has chosen to knowingly and explicitly provide for union representation during criminal investigations does not confer upon the County the authority, when acting in the capacity of an employer in collective bargaining process, to contract regarding the manner in which the Prince George's County Police Department conducts its statutorily mandated duties as a law enforcement agency. <u>See</u> PGCC § 18-135(a) ("The Police Department functions shall be as follows: (1) The protection of life and property. (2) The preservation of peace and order. (3) The prevention of crime. (4)

The arrest of all violators of the law. (5) **The enforcement of th[e PGCC] and all other laws and ordinances**. . . ." (Paragraph breaks omitted) (emphasis added)). Stated otherwise, the State's decision to enter into a collective bargaining agreement establishing the opportunity for union representation for civilian employees during criminal investigations is not dispositive of the County's authority to do so. The circumstance remains that neither PGCC § 13A-109(a) ("The employer and the exclusive [collective bargaining] representative . . . shall negotiate in good faith with respect to wages, hours and other terms and conditions of employment [that] are subject to negotiation under this law[.]") nor any other provision of the Prince George's County Code or the Code of Maryland provides the County with the authority to engage in collective bargaining about matters that are related to the prevention of crime or the conducting of criminal investigations. Reaching a conclusion that is similar to that of the Appellate Court of Illinois in Ill. State Police, 751 N.E.2d at 1266, we conclude that, when the Prince George's County Police Department is investigating an employee's criminal conduct, the police department is acting under its statutorily mandated duty to enforce the laws of Prince George's County. See PGCC § 18-135(a)(5) ("The Police Department functions shall be as follows: . . . (5) The enforcement of th[e PGCC] and all other laws and ordinances."). The County lacked the authority in the collective bargaining process to grant contractual rights to police civilian employees in criminal investigations that the Prince George's County Police Department is required by statute to conduct. We decline to conclude that, because the State entered into a collective bargaining agreement extending the Weingarten right to criminal investigations, the County was therefore empowered to do the same.

- 28 -

Our conclusion in this case does not at all undermine the well-established principles that "judicial review of an arbitration award is very narrowly limited," Downey, 428 Md. at 268, 51 A.3d at 585 (citation omitted); that "[m]ere errors of law . . . do not ordinarily furnish grounds for a court to vacate . . . an arbitration award[,]" id. at 266, 51 A.3d at 583 (brackets, citations, and internal quotation marks omitted); and that a court may not substitute its interpretation of a contract for an arbitrator's, see Amalgamated Transit Union, Div. 1300, 305 Md. at 388, 504 A.2d at 1136 ("[S]o far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling [the arbitration award] because their interpretation of the contract is different from [the arbitrator's]." (Citation omitted)). Notably, CJ § 3-224(b)(3) states: "[A] court shall vacate an [arbitration] award if . . . [t]he arbitrators exceeded their powers[.]" In determining whether an arbitrator exceeded the arbitrator's powers, a court does not review the arbitrator's interpretation of a contract for legal correctness. See Downey, 428 Md. at 263, 51 A.3d at 582 ("[J]udicial review of an arbitrat[ion] award on the basis of . . . 'manifest error of law' does not fall within any of the grounds [] in [CJ] § 3-224(b)[.]"). Instead, in determining whether an arbitrator exceeded the arbitrator's powers, a court determines whether the arbitrator acted within the scope of the arbitrator's authority. See id. at 263, 51 A.3d at 582 ("[A]n issue or matter resolved by an award may be rational and legally correct but the arbitrator, under the arbitration agreement, may have had no **power or authority** to resolve the particular issue." (Emphasis added)). Thus, our case law establishes a distinction between review of an arbitration award for correctness—as opposed to review of the validity of a collective bargaining agreement or whether the

arbitrator exceed the arbitrator's authority.

Finally, we dispose of the Association's contention that this Court cannot conclude that the County lacked the authority to contract away its ability to conduct criminal investigations without making Weingarten advisements, as the County did not "submit th[e] question of negotiability to" the Prince George's County Public Employee Relations Board. The Prince George's County Public Employee Relations Board's duties include resolving negotiability disputes. See PGCC § 13A-110(f)(1) ("The [Unfair Labor Practices] Panel [of the Prince George's County Public Employee Relations Board] may issue a statement, accompanied by reasons therefor, indicating whether item in dispute is negotiable."). PGCC § 13A-110(a) defines a "negotiability dispute" as occurring "when a labor organization and an employer disagree on whether the collective bargaining agreement, applicable rules or regulations, this law, other law or the [Prince George's] County Charter, as the case may be, prohibits bargaining with respect to a specified matter." Significantly, PGCC § 13A-110(b) states: "[D]isputes over what is subject to a grievance procedure and what is arbitrable under such procedure shall **not** be resolved under the procedures set forth in" PGCC § 13A-110. (Emphasis added). In other words, under PGCC § 13A-110, an arbitrator, not the Prince George's County Public Employee Relations Board, decides in the first instance whether a matter that arises out of a grievance is arbitrable. In turn, under CJ § 3-224(b)(3), a court reviews an arbitration award to determine whether an arbitrator "exceeded [the arbitrator's] powers[.]" Here, we have the statutory authority to review the arbitration award and decide whether the arbitrator exceeded his authority.

In sum, a careful review of Maryland case law and authority from other jurisdictions leads to the conclusion that an arbitration award may be vacated where an arbitrator exceeded his or her authority and that an arbitrator exceeds the arbitrator's authority by issuing an award where one of the parties lacked authority to enter into the underlying contract. For the reasons set forth above, we conclude that PGCC § 13A-109(a) does not confer upon the County the authority to enter into a collective bargaining agreement requiring that a police civilian employee be advised of a right to have a union representative present before a criminal investigative interview by the Prince George's County Police Department. The judgment of the Court of Special Appeals is hereby affirmed in part and reversed in part. We affirm the judgment of the Court of Special Appeals vacating the judgment of the circuit court and remanding for further proceedings. We reverse, however, the judgment of the Court of Special Appeals insofar as the Court ordered that the case be remanded for the purpose of a rehearing before a new arbitrator. Rather, we hold that the case shall be remanded for consideration of an appropriate award by the same arbitrator based on the existing grounds supporting the award, absent the alleged Weingarten violation. The case shall be remanded for further proceedings consistent with this opinion.[16]

---

[16]Although we do not decide the issue of back pay and reinstatement, we provide the following for guidance upon remand. Before this Court, the County contended that the arbitrator lacked the authority to award reinstatement and back pay to Ford based at least partially on the County's violation of the collective bargaining agreement (*i.e.*, the failure of the officers of the Criminal Investigations Division to advise Ford of his Weingarten right). The Association responded that the arbitrator had the authority to award reinstatement and back pay to Ford because the arbitrator based the award on multiple

- 31 -

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART AS STATED IN THE OPINION. PETITIONER TO PAY COSTS.**

---

considerations, not just the failure of the officers of the Criminal Investigations Division to advise Ford of his Weingarten right.

In opposing the remedy of back pay and reinstatement based on an alleged Weingarten violation, the County relied on Taracorp Indus., 273 N.L.R.B. 221, 223 (1984), in which the National Labor Relations Board held: "[W]e are without authority to order reinstatement and back[ ]pay as a remedy for a *Weingarten* violation." Taracorp concerns the propriety of reinstatement and back pay based exclusively on a Weingarten violation, which is no longer a concern in this case given our holding. Taracorp has no value in assessing the propriety of an award of reinstatement and back pay where an alleged Weingarten violation is not sustained. Here, independent of the alleged Weingarten violation, the arbitrator based the award on the following considerations: (1) Ford never "acted with the intent that would be required to prove that he [committed] the crimes enumerated in the charges against him"; (2) the County's "personnel procedures . . . encourage progressive discipline"; and (3) the County's personnel "procedures also recommend that mitigating factors . . . be taken into consideration," and Ford's misconduct was mitigated by his "excellent employment record[.]"

CJ § 3-225(a) provides that "[i]f any award is vacated on grounds other than those stated in [CJ] § 3-224(b)(5) of this subtitle, the court may order a rehearing before new arbitrators selected by the parties as provided by the agreement, or by the court in the absence of an agreement as provided in [CJ] § 3-211[.]" Upon setting forth CJ § 3-225(a), the Court of Special Appeals vacated the arbitrator's decision and award, stating: "After rehearing, the decision of the new arbitrator will be the final award, subject to the very limited judicial review applicable to arbitration awards generally." Prince George's Cnty., 219 Md. App. at 137, 98 A.3d at 1111 (citations omitted). We disagree with the Court of Special Appeals that the case must be remanded for a rehearing pursuant to CJ § 3-225(a) before a new arbitrator. The arbitrator conducted a full hearing, made detailed findings of fact, and issued an award on four grounds, three of which exist independent of the alleged Weingarten violation. The case shall be remanded to the same arbitrator for consideration in light of our holding in this case. Specifically, on remand, the arbitrator shall determine whether the three grounds for the award that were independent of the alleged Weingarten violation—lack of intent, progressive discipline, and mitigating factors—are or are not sufficient to support an award for back pay and reinstatement or a different award.