314 F.2d 25
 LOCAL 453, INTERNATIONAL UNION OF ELECTRICAL, RADIO & MACHINE WORKERS, AFL-CIO, an unincorporated Labor Organization, Appellant,
v.
OTIS ELEVATOR COMPANY, a corporation, Appellee.
 No. 227.
 Docket 27767.
 United States Court of Appeals Second Circuit.
 Argued January 24, 1963.
 Decided February 27, 1963.
 
 Irving Abramson, New York City, (Abramson & Lewis, New York City, on the brief); Donald Grody, New York City, of counsel), for appellant.
 Louis Newman, New York City (Guggenheimer & Untermyer, New York City, on the brief), for appellee.
 Before FRIENDLY, KAUFMAN and MARSHALL, Circuit Judges.
 MARSHALL, Circuit Judge.
 
 
 1
 This is an appeal by the plaintiff below, Local 453, International Union of Electrical Workers, from an order entered by the United States District Court for the Southern District of New York, Cashin, J., granting summary judgment in favor of the defendant, Otis Elevator Company. The effect of the order was to vacate, set aside, and deny enforcement to an arbitration award which had directed Otis to reinstate an employee whom it had discharged for violating a company rule prohibiting gambling. The facts underlying the controversy are not in dispute.
 
 
 2
 Joseph Calise, an employee of Otis who was represented by Local 453, was convicted on December 1, 1960, in the County Court of Westchester County on two counts of knowingly possessing policy slips in the Otis plant in Yonkers on December 28, and 29, 1959, in violation of New York Penal Law, § 974, which makes such conduct a misdemeanor. He was fined a total of $250. There was testimony at the trial that four other Otis employees were "working for" Calise in handling policy slips within the plant, but apparently none of the four was prosecuted by the public authorities or disciplined by Otis.
 
 
 3
 During the eleven months that elapsed between the date of Calise's arrest and the date of his conviction, Otis took no disciplinary action against him and he remained on the job without evidence of further transgression. However, on December 5, 1960, four days after Calise's conviction was entered, he was discharged for violating the company's rule against gambling on its premises during working hours. The union challenged the discharge and after the exhaustion of grievance procedures under the collective bargaining agreement the parties submitted the dispute to arbitration.
 
 
 4
 The applicable provisions of the collective bargaining agreement gave the employer "the right to discharge any employee for just cause" and the union "the right to challenge the propriety of the discharge of any employee" as a grievance. The agreement further provided that when an issue was submitted to arbitration, the decision of the arbitrator "shall be final and binding upon the parties." In submitting the present controversy to arbitration, the parties stipulated that the question for decision was, "Has Joseph Calise been discharged for just cause, and if not what shall the remedy be?"
 
 
 5
 The arbitrator concluded that under all of the circumstances Calise had not been discharged for just cause. He ordered Otis to reinstate Calise to his former position on July 3, 1961, but without back pay or accrual of seniority or other benefits flowing from the collective agreement for the seven-month period of disciplinary layoff, although his prior-accrued seniority and pension rights were to be preserved and not to be affected by the layoff.
 
 
 6
 The arbitrator made plain that Calise had been guilty of serious misconduct and that his award was in no way to be taken as condoning "such illegal activities as policy numbers gambling." Substantial disciplinary action sufficient to serve as a deterrent would have been permissible, he said, but "outright and final discharge is a disciplinary action with effects too harsh upon the grieving employee." He based his decision upon the facts that Calise had already been punished once for his offense by the public authorities, that he had undergone a seven-month layoff without pay or unemployment compensation, that he had 24 years of unbroken seniority and satisfactory service at the company, that he had "heavy family obligations involving four young innocent children and a wife," that as a result of discharge he would lose considerable pension rights "built up after decades of service," and that the company had not disciplined the four other men who "were guilty also of violating the same rule against gambling in the plant."
 
 
 7
 The union subsequently brought suit in the United States District Court for the Southern District of New York to confirm the arbitration award and to compel Otis to comply with it, asserting jurisdiction under Section 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185. By an order to show cause, the union moved for a preliminary injunction to compel compliance pending final disposition of the action. The motion was denied by the District Court, MacMahon, J., in an opinion reported at 201 F.Supp. 213 (S.D.N.Y.1962), on the ground that the arbitrator's award was "void and unenforceable" because violative of an "overriding public policy." The court said that the award "indulges crime, cripples an employer's power to support the law, and impairs his right to prevent exposure to criminal liability." Id. at 218.
 
 
 8
 The union then moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The District Court, Cashin, J., in an opinion reported at 206 F.Supp. 853 (S.D.N.Y. 1962), denied the motion. At the same time, since there was no genuine issue of fact, it exercised its right to grant summary judgment to the defendant, vacating and setting aside the arbitration award, without the filing of a formal cross-motion. See Local 33, International Hod Carriers, etc., Union of America v. Mason Tenders District Council, 291 F.2d 496 (2 Cir., 1961); United States v. Cless, 150 F.Supp. 687 (M.D.Pa.1957), affirmed, 254 F.2d 590 (3 Cir., 1958); 6 Moore, Federal Practice ¶ 56.12, pp. 2088-89 (2d ed. 1953).
 
 
 9
 In entering summary judgment for the defendant, Judge Cashin said that he agreed with "Judge MacMahon's determination that the arbitrator had the power to settle the dispute involved. I also agree that this court is foreclosed [by the arbitrator's decision] from considering the question of whether or not the commission of a crime by an employee upon the premises of the employer is just cause for discharge as a matter of law." 206 F.Supp. at 854. But he nevertheless felt bound to deny enforcement to the arbitrator's award.
 
 
 10
 "However, as Judge MacMahon found, the misconduct involved here is not just an infraction of a company rule. It is a misdemeanor under § 974, McK. Consol. Laws, c. 40, of the N. Y. Penal Law. This same statute also provides that a `person who * * * is the owner * * * of any place * * * where policy playing or the sale of what are commonly called "lottery policies" is carried on with his knowledge or after notification that the premises are so used, permits such use to be continued, or who aids, assists, or abets in any manner, * * * is a common gambler, and guilty of a misdemeanor.' Thus, the responsibility for the observance of this law rests upon the owner of the premises and exposes him to criminal prosecution.
 
 
 11
 "In the instant case, Calise was not just gambling himself, but he was carrying on organized professional gambling and had four other employees working for him. Under these circumstances I cannot compel the defendant to comply with the arbitration award." Id. at 855.
 
 
 12
 It is from the decision of Judge Cashin that the union has taken this appeal.
 
 
 13
 The decision of Judge Cashin expressly adopted the conclusions of Judge MacMahon that the grievance that arose between Local 453 and Otis over the discharge of Calise was an arbitrable one and that the arbitrator had the power to settle the dispute involved. These conclusions were clearly correct. The terms of the collective bargaining agreement provide that the employer may discharge an employee for "just cause" and that the union may challenge the "propriety" of a discharge as a grievance. They further provide that the arbitrator shall have the authority to make a "final and binding" decision on all grievances between the parties. The agreement nowhere defines what conduct constitutes "just cause" for discharge or what criteria shall govern the "propriety" of a discharge. That the parties intended to leave such definition to the arbitrator is made plain both by the "plenary grant" of power made to him, 201 F.Supp. at 217, and by the broad scope of the stipulated question, framed only in terms of "just cause", which accompanied the submission. Although the scope of an arbitrator's authority is not unlimited, Textile Workers Union of America v. American Thread Co., 291 F.2d 894 (4 Cir., 1961), the terms of the contract and of the submission in the present case, underscored by the rule that courts must uphold the arbitrator in the exercise of the broadest jurisdiction in the absence of specific contractual limitations on that jurisdiction, clearly bespeak arbitrability. United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S. Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); Hays, "The Supreme Court and Labor Law, October Term, 1959," 60 Colum.L. Rev. 901, 920 (1960).
 
 
 14
 Having bargained for the decision of the arbitrator on the question of whether Calise's conduct and criminal conviction constituted "just cause" for discharge, the parties are bound by it, even if it be regarded as unwise or wrong on the merits; "so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960). To separate the just causes for discharge from the injust was precisely what the parties clothed the arbitrator with the authority to do. If the employer wanted the automatic right to discharge an employee for violation of certain company rules or for the commission of certain crimes, whether on or off the company premises, it had the opportunity to seek such an explicit exclusion from the general arbitration clause when the collective agreement was negotiated, as it may do when the collective agreement expires. In the absence of such a clause, the decision of the arbitrator in the present case must be taken as conclusively establishing as a matter of contract interpretation that the discharge of Calise was not for just cause and as foreclosing judicial review of the merits of the question.
 
 
 15
 Despite his recognition of the force and applicability of these principles, Judge Cashin nevertheless concluded, for the same reasons for which Judge MacMahon had concluded, that the award of the arbitrator was judicially unenforceable because of its repugnance to public policy. The precise nature of the public policy which the award was thought to offend is not made clear by either opinion in the District Court. Apparently the Court was concerned with the fact that the possession of policy slips "is regarded by responsible law enforcement officials, state and federal, as the incubator of most, and more sinister, organized crime," 201 F.Supp. at 218, and with the fact that since an employer is responsible for knowingly permitting policymaking on his premises, "[t]o deny him the power to discharge for the commission of such a crime upon his property exposes him to criminal prosecution." Id. at 217. See 206 F.Supp. at 855. We think that the District Court's analysis of the public policy issue was inadequate. Accordingly, we reverse, with instructions that an order issue compelling the employer to comply with the terms of the arbitrator's award.
 
 
 16
 It is no less true in suits brought under § 301 to enforce arbitration awards than in other lawsuits that the "power of the federal courts to enforce the terms of private agreements is at all times exercised subject to the restrictions and limitations of the public policy of the United States. * * *" Hurd v. Hodge, 334 U.S. 24, 34-35, 68 S.Ct. 847, 852-853, 92 L.Ed. 1187 (1948). The public policy to be enforced is a part of the substantive principles of federal labor law which federal courts, under the mandate of Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), are empowered to fashion. Cf. Local 174, Teamsters, etc., v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). Thus, when public policy is sought to be interposed as a bar to enforcement of an arbitration award, a court must evaluate its asserted content.
 
 
 17
 Of course there is a public policy which condemns gambling by an employee on the premises of his employer; it is a policy expressed by the section of the New York Penal Law which Calise was convicted of violating. But that policy has been vindicated in the present case in the very manner that the State of New York contemplated, by a criminal conviction and the judicial imposition of a penalty. Parenthetically, it may further have been vindicated, beyond any demands of the State of New York, by the seven-month layoff without compensation or accrual of seniority benefits which Calise sustained and which the arbitrator upheld. There is no federal policy that requires greater vindication of the public condemnation of gambling than this. The law is not that Draconian. To enforce the arbitrator's award in these circumstances cannot fairly be looked upon as judicial condonation of Calise's offense.
 
 
 18
 Moreover, in light of the important role which employment plays in implementing the public policy of rehabilitating those convicted of crime, there can hardly be a public policy that a man who has been convicted, fined, and subjected to serious disciplinary measures, can never be ordered reinstated to his former employment, particularly when the conviction was for his first offense and when the arbitrator found no indication that reinstatement would result in repetition of the illegal activity. Indeed, the arbitrator in effect took into account the importance of rehabilitation when he concluded that the criminal conviction, the sentence imposed as a result of that conviction, and the seven-month layoff without pay or unemployment compensation were appropriate punishment under the circumstances.
 
 
 19
 The argument, persuasive to the District Court, that reemployment of Calise may subject Otis to prosecution under New York Penal Law, § 974 if Calise resumes his criminal activity is open to serious doubt. As one commentator has said in criticizing the result reached by the District Court in the present case, "It is hard to imagine that an employer who had specifically indicated his disapproval of gambling on the premises, had penalized the employee found guilty, and had warned the employee against any such conduct in the future could be found guilty of violating the statute." Fleming, "Arbitrators and the Remedy Power," 48 Va.L.Rev. 1199, 1209 (1962).
 
 
 20
 The award of the arbitrator was regular in every respect. There is no substantive principle of federal labor law which authorizes denial of enforcement on the present facts for reasons of public policy. Accordingly, the judgment below is reversed, with instructions that an order issue compelling Otis to comply with the terms of the arbitration award.
 
 
 21
 Reversed.